7953

REMBERT v. VETOE.

1. WILLS—LIMITATION OF ESTATES.—Under a devise to my daughter M. for life "and at her death to such of her issue as she may leave living at the time of her death, to be equally divided among such issue," only those grandchildren and great-grandchildren of M. whose parents were not *in esse* at the time of her death, are to be construed as "issue," and those *alone* who would have taken under the statute are included within the word "issue."

MR. JUSTICE WOODS *dissents.*

2. IBID.—THE POWER conferred on a devisee under the will here to dispose of one-third of the property while living in any manner she may choose, was properly executed by a deed conveying the fee to another and reserving to herself a life interest in the land conveyed

and by reference to the instrument by which the power was con-
ferred.

3. APPEAL.—Motions to amend pleadings are addressed to the discretion
of the Court, and there is no appeal except for abuse of discretion.

4. RENTS.—A TENANT IN COMMON, not cultivating more than his share
of the tillable land, is not liable for rents and profits.

Before ERNEST MOORE, Special Judge, Fairfield, October,
1910.   Modified.

Action by Sarah Emeline Rembert and others against
Carrie Vetoe and others.

So much of the Circuit decree as is material is:

"This is an action seeking a sale for partition of certain
real estate, described in the complaint, alleged to be owned
as tenants, in common by the plaintiffs and defendants.
Certain issues as to the title to the lands, and as to the
accountability of certain parties for rents and profits being
raised by the pleadings, a jury trial of any legal issues of
title having been expressly waived, it was referred to James
G. McCants, Esq., to take the testimony upon the issues and
report the same to the Court.   The testimony having been
taken and reported accordingly the cause came on for hear-
ing before me at the last term of the said Court, and after
full argument, decision thereupon was reserved for further
consideration. * * *

"The plaintiffs contend that under the provisions of the
will above quoted, all the lineal descendants of Martha
Amanda Robertson, living at the time of her death, took as
remaindermen, being denoted by the term 'issue,' that the
distribution amongst such issue must be per capita ; while the
defendants maintain that the words 'according to the statute
of distribution of intestate estates,' which are found in the
latter part of said item 6 of the will, must be regarded as
qualifying not only the words 'next of kin,' immediately
preceding the phrase quoted, but also the word 'issue' as

used in the preceding clause of the same item; and that, therefore, Mrs. Emeline Rembert is entitled to one-third, Mrs. Ruth Mason to one-third, and the children of Thomas W. Robertson, deceased, are entitled to the remaining third, the distribution being *per stirpes*.

"It is also contended on behalf of Mrs. Sarah Emeline Rembert and her issue *in esse* (all of whom are before the Court) that as to the one-third interest in the Home Place, the same was duly conveyed to them by the terms of the above instrument in the form of a deed, which said plaintiffs submit was a valid execution of the power of sale thereof conferred on Sarah H. Jones by the will of Ralph Jones above quoted.

"Considering now the first question presented for determination, as to the proper construction of the 6th item of the will of Ralph Jones, the settled rule of construction is that the intention of the testator must be ascertained from the language used by him, but that, in so ascertaining the intention, not only the sentence or clause of the sentence to be constructed is to be considered, but that the provisions of other clauses or sentences may also be considered in determining the particular intent with which the words in question were used by the testator. The primary rule for ascertaining the intention, however, is that the same must be determined from a consideration of the words used by him in expressing that intention, and a resort to conjecture for the purpose of determining the intention is not permitted. Therefore, it has been properly held that limitations imposed by one clause under one contingency cannot be applied to dispositions made by another clause for a different contingency. See *Mobley* v. *Cummings,* 35 S. C. 101.

"Now, the devise here in question, by its express terms, is to Martha Amanda Robertson for life, and after her death 'to such of her issue as she may leave living' at that time 'to be equally divided among such issue.' By an immediately succeeding clause in the same sentence, however,

separated only by a comma, it is further provided that 'if my said daughter should die leaving no issue alive at the time of her death, it is my will that said two-thirds be equally divided among my next of kin at that time living, according to the statute of distribution of intestate estates.' The argument is that since the testator has directed the distribution among the *next of kin* to be made according to the statute of distributions, it must be concluded that he desired the division among the *issue* of his daughter to be made in the same way, although the next of kin referred to are the testator's next of kin while the *issue* intended are the issue of his daughter; and it is further insisted that no special force can be given to the words 'to be equally divided' as applied to the issue of the daughter for the reason that the same words are used with reference to the division to be made among the next of kin of the testator, in the event of the death of the daughter without leaving living issue.

"Upon well settled principles of construction, however, it would seem to be clear that, by the term 'issue' as used in this will, the testator must be held to have intended the lineal descendants of Martha Amanda Robertson, whether children or grandchildren, living at the time of her death; and the words, 'to be equally divided among such issue' plainly import a division *per capita*. *Corbett* v. *Laurens,* 5 Rich. Eq. 301; *Rutledge* v. *Rutledge,* Dud. Eq. 201; *Allen* v. *Allen,* 13 S. C. 512.

"It is true that, whenever, by the terms of description in a devise, resort must be had to the statute of distributions for the purpose of ascertaining the objects of the gift, reference must be also had to the statute to determine the proportions in which the donees shall take, unless a different rule of distribution is provided by the will. *Templeton* v. *Walker,* 3 Rich. Eq. 543; *Collier* v. *Collier, Ibid.* 555. But while this rule applies in all cases where the words 'heirs' or 'next of kin' are used, it has no application to the use of the term 'issue' for that word is not a term depending upon the statute

of distributions for an interpretation of its meaning.    See
*Corbett* v. *Laurens* and *Rutledge* v. *Rutledge, supra.*

"By grammatical construction, the words 'according to
the statute of distribution of intestate estates' appearing in
the will now at bar, can be taken only as qualifying the
immediately preceding words, 'my next of kin at that time
living.'    The words in question naturally relate and apply
only to the immediately preceding phrase 'next of kin' and
have no reasonable relation to the remotely preceding word
'issue.'    To adopt the construction as contended for by the
defendants and interpolate after the word 'issue' the phrase
'according to the statute of distribution of intestate estates,'
would be in effect to add to the will of the testator words
which he has not in any way evinced an intention of using
in that connection, and which would necessarily destroy the
force and effect of the immediately preceding words actually
there used by him that the property in question is 'to be
*equally* divided among such issue.'    To so interpolate the
words mentioned would be practically to strike out of the
will words used by the testator, which are apt and fit words
to express an intention that the division among the 'issue'
of his daughter living at her death would be *per capita.*
Even if no reason could be seen for a distinction in the mat-
ter of the mode of the division prescribed in the case of a
taking by the 'issue' of Martha Amanda Robertson, and that
provided in the case of the happening of the contingency
upon which the 'next of kin' of the testator are to take, never-
theless, the will must be construed as written and effect given
to the expressed intention of the testator.    *Mobley* v. *Cum-
mings, supra; Manigault* v. *Deas,* Bail. Eq. 298; *Moon* v.
*Moon,* 2 Strob. Eq. 327; *Bowers* v. *Newman,* 2 McM. 472.

"It must, therefore, be concluded that all the lineal
descendants of Martha Amanda Robertson, living at the
time of her death, are entitled to participate in the division
of the 'remaining two-thirds' of the estate of the testator,
passing under the residuary devise in said 'item 6' of the will

in question, and that such division must be made among such 'issue' of the said Martha Amanda Robertson per capita and not *per stirpes*.

"The next question to be considered is as to whether the instrument styled a deed from Sarah H. Jones to her daughter, the plaintiff, Sarah Emeline Rembert, and her issue, is a valid execution of the power conferred upon the said Sarah H. Jones by the will of the testator, Ralph Jones. It is not questioned, but that this instrument was duly executed, delivered and recorded, but it is objected that it makes no reference to such power of disposition given by the will, nor does it purport to be an execution of such power, nor does it specify what interest in, or portion of the lands in question is thereby sought to be conveyed.

"Now, it is true that Sarah H. Jones had a life estate in the Home Place of 1,055 acres mentioned in this instrument, and that she had a power of disposition *inter vivos* as to one-third of the fee thereof, but it is also true that she makes no direct reference to this power. But she did undertake to convey 'all her right, title and interest' in the tract in question by the granting clause of the instrument executed by her, and by the *habendum* clause thereof she limits a fee estate in 'the said premises' to such of the issue of Sarah E. Rembert as she may leave living at the time of her death, while by the warranty clause she warrants 'the said premises' to the said grantees from and against herself and her heirs, and all other persons. The paper, therefore, must be held to have been intended as a conveyance of the fee in these lands, as its terms could not be satisfied by considering it merely as a conveyance of the life estate of the grantor. Furthermore, after thus conveying or attempting to convey all her 'interest' in the tract, the grantor proceeds to define what is meant by the word *interest* in that clause of the deed where she says in describing the land, 'being the same tract of land wherein an interest was devised to me in and by my husband, Ralph Jones, in his last will and testament.

In the case of *Moody* v. *Tedder*, 16 S. C. 563, the use of this very word 'interest' was held to manifest an intention by the grantor to execute a power of sale given by will. In this case, which upon the point at issue here closely parallels the one at bar, the grantor had a life estate in the property, coupled with a power of disposal for certain purposes, and she made a conveyance containing no direct reference to the power, but conveying 'all her interest and life estate' in the property. In holding this to be a good execution of the power, the Supreme Court of this State says: 'It may be true that the word "interest" was not the technical term to express the idea of a power; but in the ordinary acceptation of the word, it was broad enough to cover it, and we think the deed was intended to include the power. The question of the execution of a power is always one of intention, and if the devisee of the power intends to execute it, that intention, however, manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative.'

"In the case just cited, the Court quotes with approval the doctrine as laid down in 1 Sudg. Pow. 419, that 'when a man has a power and an interest, and he creates an estate, which will not have an effectual continuance in point of time, if it be fed out of his interest, it shall take effect by force of the power.' See also 31 Cyc. 1125.

"Applying these principles to the case at bar, it seems to be clear that the grantor intended to convey to the grantees named in the instrument all the *interest* which she could convey under the provisions of the will of her husband, Ralph Jones, for she grants not only her 'right and title,' but also all the 'interest' which she took under said will, and this could not be satisfied, nor could the apparent purpose to convey a fee simple estate be fulfilled, except by considering it as referring to the power of disposition of the one-third interest in the fee thereof given to her by said will. Moreover, the terms of the instrument showing the intention

of the grantor to reserve her life estate in the very lands unquestionably and conclusively evidence the purpose to execute the power given by the will, as otherwise the paper would have been entirely inoperative.

"But it is said that the instrument in question is not effective as an execution of the power for the reason that (as defendants maintain) an attempt is thereby made to limit a freehold estate to commerce *in futuro,* which cannot be done by way of direct grant, and the defendants also submit that the deed cannot be sustained as a covenant to stand seized to uses, for the reason that it is not supported by a valuable consideration.

"It is considered, however, that even if the written instrument in question cannot be held valid as a deed by which the title passes *in praesenti,* the grantor merely reserving to herself the use and possession during her life, as was held in the somewhat similar cases of *Merck* v. *Merck,* 83 S. C. 332; *Sumner* v. *Harrison,* 54 S. C. 353, and *Cribb* v. *Rogers,* 12 S. C., it may nevertheless be held effective as a covenant to stand seized to uses, being supported by the consideration of blood relationship between the grantor and grantee, notwithstanding the absence of a valuable consideration, and notwithstanding any limitations of a fee to commence *in futuro,* which may be contained therein. *Watson* v. *Watson,* 24 S. C. 235; *Chancellor* v. *Windham,* 1 Rich. 164; *Kinsler* v. *Clark,* 1 Rich. 170.

"But the defendants nevertheless maintain that this deed considered as a covenant to stand seized to uses, cannot be held as an execution of the power conferred by the will of Ralph Jones for the reason that (by the terms of the covenant therein) no estate in the lands is created or conveyed until after the death of the said Sarah H. Jones, the donee of the power under the said will, whereas by the express terms of the will of Ralph Jones the said donee was empowered to dispose of the said one-third of these lands only 'while living.' The answer to this position, however, is that

the condition of the exercise of the power was merely that it should be exercised by the said Sarah H. Jones 'while living,' that is to say, during her lifetime by any instrument then taking effect. The use of the testator of the expression 'while living' was merely a declaration that the power could not be executed by a will which becomes operative only at death, but that it could be executed by any mode of conveyance taking effect *inter vivos*. Manifestly, the execution of a covenant to stand seized to uses operates as a conveyance *in praesenti* of the estate thereby created in the lands. The only limitation of the power of disposition given by the will in question was that it should be so exercised that the transfer of the title to the fee simple remainder after the life estate of Sarah H. Jones should take effect in the lifetime of Sarah H. Jones by her act. Clearly, this requirement was as fully satisfied by the execution of a covenant to stand seized to uses as it could have been by a deed of conveyance in trust for herself for life, with remainder in fee to the grantees named therein. In either case, the transfer of the title to the fee simple remainder, which Sarah H. Jones was empowered to make, would take effect from the date of the execution and delivery of the instrument, which was during the lifetime of the grantor or covenantor, and there was no condition of the execution of the power that she should likewise convey her life estate.

"The conclusions already stated dispose of all the issues in the case, except the questions as to the accountability of the plaintiff, Sarah Emeline Rembert, for rents of the Home Place, and as to the liability of the defendant, Ruth Mason, for waste alleged to have been committed by her upon the Piny Woods tract of land.

"As to the matter of the accountability of said plaintiff, Sarah E. Rembert, for rents of the Home Place, upon a consideration of the testimony, I am satisfied that she has not cultivated more than her share of the tillable land, and that,

therefore, she is not accountable for the rents received by her."

From this decree the defendants Ruth Mason, Edward R. Mason, and Ralph W. Mason and Carrie Vetoe and other defendants appeal.

*Messrs. Ragsdale & Dixon,* for the Mason appellants. *Mr. Ragsdale* cites: *Does the term "issue" denote a class of persons to take as purchasers and is a reference to the statute of distributions implied to ascertain the persons who take?* 1 Rich. Eq. 412; 3 Rich. Eq. 573; 2 Hill's Law 328; Bail. Eq. 535; 7 Rich. Eq. 363; 3 Rich. Eq. 543; 1 Strob. Eq. 116; 7 Rich. Eq. 134; 9 Rich. Eq. 464; Rice Eq. 10; 3 Rich. Eq. 543; 13 S. C. 512; 37 S. C. 255; 37 S. C. 255; 84 S. C. 83; 1 Strob. Eq. 286; 21 S. C. 207; 70 S. C. 205. *The will provides that the issue shall take according to the statute:* 3 Rich. Eq. 555; 4 Rich. Eq. 345; Dru. & War. 84; 143 N. Y. 125; 80 N. Y. Supp. 653, 656; 6. N. J. L. 111; 91 Am. Dec. 156; 4 Beav. 229; Schuler on Wills, sec. 539; 16 S. C. 311; 3 Rich. Eq. 572; 35 S. C. 101; 1 Red. on Wills 435; 24 S. C. 237; 17 Ency. 20; 14 S. C. 107; Schouler 561; 9 Rich. 459; 2 Jarmon 135; 27 S. C. 492; 67 S. C. 133; 86 S. C. 445; 44 S. C. 523. *"Issue" when used as a word of purchase means "children."* 67 S. C. 307; 83 S. C. 268; 2 Red. 37. *Freehold estate cannot be created to commence in future:* 4 Kent. 234; 1 Preston on Est. 220; 1 Rich. 161, 170; 12 S. C. 564; 16 S. C. 132; 24 S. C. 228; 3 Strob. Eq. 134; 59 S. C. 40. *Contingent remainderman cannot maintain action for waste:* 2 McC. Ch. 137; 1 Wash. Real Prop. 120; Tied. on R. P., sec. 61; 19 S. C. 336; 29 S. C. 279; 139 N. C. 9; 30 Ency. 280, 291; 1 Strob. Eq. 132; 2 Rich. 259; 2 McC. Ch. 143; 16 S. C. 233. *Tenant at will is not chargeable with waste:* 1 Wash. 508; 30 Ency. 269; 1 Add. on Torts, sec. 327. *Family settlements are upheld:* 32 S. C. 263; 4 Rich. Eq. 355; 17 Ency. 23; 3 Ency. 532-4.

*Messrs. McDonald & McDonald,* for Carrie Vetoe *et al.,* cite: *The deed cannot be considered a valid execution of the power in the will by construing it to be a covenant to stand seized to uses:* 1 Hill R. P. 405; 3 Id. 471, 477-8; 4 Kent. *492-3.

*Messrs. A. S. & W. D. Douglass,* contra. *Mr. W. D. Douglass* cites: *Who take and in what proportions?* 5 Rich. Eq. 301; 19 L. R. A. 472; 100 Tenn., 404; 27 S. C. 492; Dud. Eq. 201; 2 Jar. *101; 9 Rich. Eq. 459; Riley Eq. 212; 11 Ency., 1 ed. 869; 84 S. 'C. 81; 2 Hill Ch. 328; 7 Rich. Eq. 134; 80 S. C. 94; 72 S. C. 183; 37 S. C. 265; 21 S. C. 183; 3 Rich. Eq. 550. *Nothing to restrict the word issue:* 35 S. C. 123; 2 Jar. 71. *Valid execution of the power:* 14 S. C. 540; 31 Cyc. 1125-6; 16 S. C. 64. *Deed reserves life estate to grantor but takes effect in praesenti:* 83 S. C. 332; 54 S. C. 383; 12 S. C. 564. *Deed is also valid as a covenant to stand seized to uses:* 24 S. C. 228; 3 Taunt 335. *What is waste?* 1 Hill Ch. 295; 30 Ency. 279. *Right to accounting, not barred:* 25 S. C. 162; 79 S. C. 407.

July 7, 1911.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This an action for partition.

Ralph Jones departed this life in 1854, leaving in full force and effect his last will and testament, whereby he disposed of the lands described in the complaint. The sixth clause of the will, which gave rise to this action, is as follows:

"All the rest and residue of my estate, of any kind and description, real and personal, not hereinbefore disposed of, I devise and bequeath to my beloved wife, Sarah H. Jones, for and during the term of her natural life, with the power to dispose of one-third thereof, while living, in any way she may choose to do; the remaining two-thirds thereof, after the decease of my said wife, I devise and bequeath to my daughter, Martha Amanda, to her sole

and separate use, during her life, and at her death to such of her issue as she may leave living at the time of her death, to be equally divided among such issue, but if my said daughter should die leaving no issue alive at the time of her death, it is my will that said two-thirds be equally divided, among my next of kin at that time living, according to the statute of distribution of intestate's estates."

The widow Sarah H. Jones died in October, 1891, and Martha Amanda Robertson the daughter mentioned in said clause, departed this life on the 2d of July, 1908. Martha Amanda Robertson had three children, to wit: a son Thomas W. Robertson who predeceased her, and two daughters, Sarah Emeline Rembert and Martha R. Mason who survived her. She also left fourteen grandchildren, and twenty-one great-grandchildren, twenty-eight of whom were descendants of Sarah Emeline Rembert.

At the time of Martha Amanda Robertson's death in 1908, there were *in esse* four children and one grandchild of Thomas W. Robertson, then deceased.

In discussing the proper interpretation of the word "issue," in the 6th clause of the will, his Honor the Circuit Judge, says:

"Upon well settled principles of construction, it would seem to be clear that, by the term 'issue' as used in this will, the testator must be held to have intended, the lineal descendants of Martha Amanda Robertson, whether children or grandchildren, living at the time of her death; and the words, 'to be equally divided among such issue' plainly import a division *per capita*. It must therefore, be concluded that all the lineal descendants of Martha Amanda Robertson, living at the time of her death, are entitled to participate in the division of the 'remaining two-thirds' of the estate of the testator, passing under the residuary devise in said 'item 6' of the will in question, and that such division must be made among such 'issue' of the said Martha Amanda Robertson *per capita* and not *per stirpes*."

14—89

The Circuit Judge relies upon the following cases, to sustain his conclusion, namely: *Rutledge* v. *Rutledge,* Dud. Eq. 201; *Corbett* v. *Laurens,* 5 Rich. Eq. 301; *Allen* v. *Allen,* 13 S. C. 512. In the case of *Rutledge* v. *Rutledge, supra,* it was held that the issue of a child, who died in the lifetime of the surviving tenant for life, took equal shares with the children of the marriage, as they were alike comprehended under the word issue. In the case of *Corbett* v. *Laurens,* the Court ruled that, upon the authorities cited in *Rutledge* v. *Rutledge,* all the descendants of the life tenant, grandchildren as well as children, were included in the term issue and took *per capita.* But, in neither of these cases, was the question raised, as to the necessity to resort to the statute of distributions, for the purpose of determining who were comprehended under the word issue. And the case of *Allen* v. *Allen,* 13 S. C. 512, while sustaining the conclusion that the issue take *per capita,* lays down the principle, that when the word "heirs" is used, it is necessary to resort to the statute of distributions, and that those who would not be entitled to take as heirs under the statute, would not have the right to participate in the division of the property. In that case the rule is thus stated:

"The general rule is, that where there is a gift to a class of persons, without any direction as to the proportions in which the individuals of the class are to take, all who can bring themselves within the class, are entitled to participate in the distribution, which must be *per capita.* But where the gift is to a class, the individuals of which can only be ascertained, by a resort to the statute of distributions, then the provisions of the statute must also be resorted to, for the purpose of ascertaining the proportions, in which the donees are to take, unless, in the instrument, by which the gift is made, a different rule of distribution shall be prescribed. *Templeton* v. *Walker,* 3 Rich. Eq. 543. If, therefore, the gift is to a class of persons, designated as heirs of a particular person, then, as it is necessary to resort to the statute, to

ascertain who are the individuals composing the class, resort
must also be had to the statute to determine how, or in what
proportions, such individuals shall take. This is upon the
presumption, that the donor having, by implication at least,
referred to the statute, as to the persons who are to take,
also intended that reference should be had to the statute, to
determine the proportions in which they should take, unless
he expresses a different intention. But when he prescribes
a different mode of distribution, then no such presumption
can arise, and the distribution must be made in the manner
prescribed." See also *Brantley* v. *Bittle,* 72 S. C. 179, 51
S. E. 561, and *Carolina B. & Ins. Co.* v. *Caldwell,* 86 S. C.
331, 68 S. E. 640.

It is, however, contended that although it may be neces-
sary, to resort to the statute, when a devise is to the "heirs"
or "heirs of the body," no such necessity exists, when the
word "issue" is used by the testator. In determining this
question, it will be well to state the reasons upon which the
rule is founded, requiring that those words be interpreted in
the light of the statute. Chancellor Harper in *Lemacks* v.
*Glover,* 1 Rich. 141, used this language:

"In England, when the term heirs or heirs of the body is
taken to mean a class of persons, these cannot, in any manner
or respect, take as heirs or heirs of the body. Whether
construed children, issue or descendants, next of kin, etc.,
they must be always different persons from the heirs : not so
with us."

In the case of *Templeton* v. *Walker,* 3 Rich. Eq. 543, it is
said : "Our act of 1791 is an act of descents as well as dis-
tributions, and determines at once who shall be the heirs of
the real estate of an intestate, and the distributees of his per-
sonality." "The term heirs is inapplicable to the succession
to personal estate, and even as to real estate, we have no
other heirs except *haeredes facti* of our statute of distribu-
tions. *Seabrook* v. *Seabrook.* In the case under considera-
tion, the Court of appeals in equity, could not have attained

the conclusion that the 'heirs of the body' of the tenant for life took as purchasers, within the rules as to the remoteness of limitations, otherwise than by construing these terms to mean the descendants of the tenant for life, living at the time of her death, or something equivalent. *No one can take as heirs of the body of another, unless he fulfills the description, and is not only such a person as would take the real estate of that other under our act of distributions, but likewise a lineal descendant."* (Italics ours.)   The Court also says: "We do not go to the statute to discover who are children, next of kin, etc., but we are obliged to look there to find out who are heirs of the body, descendants or relations entitled to take; and in the cases which actually occur, we commonly find them, not strictly a class but individuals standing in various degrees of kindred to the intestate or first taker, and entitled to unequal shares of the estate." The rule is thus stated in *Duke* v. *Faulk,* 37 S. C. 255, 16 S. E. 122:

"When the words, 'heirs of the body,' occur in a devise, accompanied by the words, 'share and share alike,' or 'equally,' or 'in equal parts,' or kindred words, and also the words, 'their heirs, executors, administrators, and assigns,' then we must look to the statute of distributions of our State, for the parties who shall answer the description, and therefore, take the devise, but that the method of distribution, is fixed by the devise itself to be *per capita,* and not *per stirpes,* and that the estate is one of purchase, and not of descent. It seems to us, that the 'heirs of the body' must be persons, *not only who answer the requirement of lineal descendants of the parent stock, but, also, such persons who would stand, at the date of the death of the life tenant, as an heir, under the provisions of our statute of distributions."* (Italics ours.)   Continuing, the Court in commenting on the case of *Lemack* v. *Glover,* 1 Rich. Eq. 141, used this language:

"The will of Peter Sinkler, gave the use of certain property to his sister, Jane Glover, for life; Mrs. Glover, at the

time of her death, had but one child, Dr. Glover; testator, after the death of the life tenant (Mrs. Glover) bequeathed such property 'to the heirs of her body, to them and their heirs and assigns, forever.' Mrs. Glover died fifty-one years after her brother's death. She had four other children born to her, all of whom, but one (Mrs. Lemacks) died before Mrs. Glover, the life tenant, and all were survived by children. The question was made as to the distribution. It was held, that Dr. Glover took one share, Mrs. Lemacks one share, and each grandchild who was the child of a deceased child, took one share each. Both Mrs. Lemacks and Dr. Glover had children, but they were denied participation in the estate. Why? Because, at the death of Mrs. Glover, the life tenant, *although her lineal descendants, they were not her heirs, under our statute of distributions;* their respective parents, Dr. Glover and Mrs. Lemacks, were alive, and were such heirs." (Italics ours.) The case of *Kernigood* v. *Davis,* 21 S. C. 183, shows that it is necessary to resort to the statute of distributions, when the devise is to heirs of the body. In that case the Court says:

"The terms of the devise here being 'to heirs of the body,' imposed the necessity of referring to the statute, to ascertain who were such 'heirs,' and if the devise had stopped there, the children of Henry W. would undoubtedly have taken, in the manner prescribed by the statute. That is to say, they would have represented their father, and taken together *per stirpes* his share—one-seventh part of the estate,—besides their distributive portion of the share of their deceased aunt, Carolina. But the superadded words, 'share and share alike,' imply equality of division, and we think made the exceptional case 'when the instrument creating the gift, indicates the intention of the donor.' " Citing *Templeton* v. *Walker,* 3 Rich. Eq. 543; *Allen* v. *Allen,* 13 S. C. 531. In *Deveaux* v. *Deveaux,* 1 Strob. Eq. 283, it is said:

"The first duty is to ascertain, how many of the claimants before the Court, come within the description given in the

will; and the second is, to discover whether all who do come within the description, can be allowed, by the rules of law, to partake of the bounty intended. *These are very distinct, enquiries, though often, confounded."* (Italics ours.)

The words "heirs of the body" and "issue" are generally equivalent in a will. *Whitworth* v. *Stuckey,* 1 Rich. Eq. 404. "Issue" is a word of limitations, and not less extensive in its import, than the words "heirs of the body." *Williams* v. *Cause,* 83 S. C. 265, 65 S. E. 241; *Arledge* v. *Arledge,* 86 S. C. 237, 68 S. E. 549.

The foregoing authorities show, first, that it is necessary to resort to the statute, when the devise is to the heirs or heirs of the body; that the words "heirs of the body" and "issue" have practically the same import in a will; that no good reason can be assigned why the necessity is not as great to resort to the statute, in a case where the gift is to the "issue," as when it is to "heirs of the body." Therefore, only those grandchildren, and great-grandchildren of Martha Amanda Robertson, whose parents were not *in esse,* at the time that Martha Amanda Robertson died, are to be construed as issue in contemplation of law; and, those alone who would have taken under the statute, are embraced within the term "issue."

The exceptions raising this question are sustained.

The next question that will be considered is, whether the power conferred upon Sarah H. Jones, to dispose of one-third of the real and personal property, while living, in any manner she may choose to do, was properly executed.

The lands in question embrace two tracts—one containing 1,055 acres, more or less, known as the Home Place, and the other containing about 496 acres, known as the Piney Woods Place. On the 26th of June, Sarah H. Jones executed an instrument of writing in the form of a deed, whereby she undertook to convey to Sarah Emeline Rem-

bert, her daughter, the Home Place in manner and form as follows:

"I, Sarah H. Jones, * * * in consideration of the sum of one dollar to me in hand paid by Sarah Emeline Rembert, * * * and of the natural love and affection which I bear to the said Sarah Emeline Rembert and her children * * * have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release unto the said Sarah Emeline Rembert all my right, title and interest in all that piece, parcel or tract of land, * * * containing one thousand and fifty-five acres, more or less, being the same tract of land wherein an interest was devised to me by my husband, Ralph Jones, in his last will and testament," the *habendum* and *tenendum* clause of this instrument being: "To have and to hold all and singular the said premises, from and after my death, unto the said Sarah Emeline Rembert, for and during the term of her natural life, and after her death, to such of her issue as she may leave living at the time of her death, their heirs and assigns, forever," and the warranty clause thereof, being: "And I do hereby bind myself and heirs, executors and administrators to warrant and forever defend, all and singular the said premises, unto the said Sarah Emeline Rembert and her issue, from and against me and my heirs, and all other persons lawfully claiming or to claim the same or any part thereof."

The rule as to the execution of a power, is thus stated in *Blagge* v. *Miles,* 1 Story 426: "The authorities on this subject, may not all be easily reconcilable with each other, but the principle furnished by them, however occasionally misapplied, is never departed from; that if the donee of the power, intends to execute the power, that intention, however, manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other determination. If it is doubtful,

under all the circumstances, then, that doubt will prevent it, from being deemed an execution of the power."

In that case Mr. Justice Story stated, as the result of the English authorities, that three classes of cases, have been held sufficient to manifest an intention to execute the power: (1) where there has been some reference in the deed or other instrument to the power; (2) or a reference to the property, which is the subject, upon which it is to be executed; (3) or where the provision in the deed or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation except as an execution of the power. See also *Bilderback* v. *Boyce,* 14 S. C. 428; *Moody* v. *Tedder,* 16 S. C. 557; *Lee* v. *Simpson,* 10 Sup. Ct. Rep. 631.

The foregoing language is quoted with approval in *Mims* v. *Chandler,* 80 S. C. 460, 61 S. E. 968.

Conceding that the words "being the same tract of land, wherein an interest was devised to me by my husband Ralph Jones, in his last will and testament," have no reference to the said power, nevertheless, they have reference to the property, which was the subject upon which the power was intended to operate; and, the deed would be ineffectual to convey all the "right, title and interest" of Sarah H. Jones in the land, if the execution of her deed cannot be referred to the power, contained in said will.

We deem it only necessary to cite the following authorities, to sustain the proposition, that the reservation of a life estate by the grantor, did not invalidate the deed as an attempt to convey a freehold to commence *in futuro,* it being effectual as a covenant to stand seized to uses: *Chancellor* v. *Windham,* 1 Rich. 161; *Kinsler* v. *Clark,* 1 Rich. 170; *Dinkins* v. *Samuel,* 10 Rich. 68; *Cribb* v. *Rogers,* 12 S. C. 564; *Jacobs* v. *Ins. Co.,* 52 S. C. 110, 29 S. E. 533; *Summer* v. *Harrison,* 54 S. C. 353, 32 S. E. 572; *Cook* v. *Cooper,* 59 S. C. 560, 38 S. E. 218; *Merck* v. *Merck,* 83 S. C. 329, 65 S. E. 347.

The next assignment of error, is, because the Circuit Judge permitted the plaintiffs to amend their complaint, so as to allege damages as the result of waste committed by Ruth Mason.

Motions to amend are addressed to the discretion of the Circuit Judge, and his rulings are not the subject of appeal, unless there is an abuse of discretion, which has not been made to appear in this case.

The foregoing conclusions, dispose of all questions presented by the exceptions, except those relating to the accountability of the plaintiff Sarah Emeline Rembert, for rents of the Home Place.

The appellant's attorneys have failed to satisfy this Court, that the preponderance of the testimony is against the findings of facts by the Circuit Judge, touching this question.

Judgment modified.

MR. JUSTICE WOODS. *I dissent*, and think the judgment of the Circuit Court should be affirmed, for the reasons therein stated.